**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ZHAI YUIJA,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. 5:26-cv-05092-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On September 3, 2026, Petitioner Zhai Yuija ("Petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), challenging her detention as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. 1 at 8–13.) For the reasons below, the Court grants the Petition.

## II. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of the People's Republic of China. (Dkt. 1 at 3.)

Petitioner entered the United States on or about August 14, 2022, as a F-1 nonimmigrant student. (Dkt. 1 at 3.) Petitioner attended school until April 24, 2023, when her studies ended and her authorized stay expired. (*Id.* at 4; Dkt. 1-5 at 1.) Since leaving school, Petitioner has worked for her husband's short-term rental company as a

household caretaker and continuously resided in San Gabriel, California. (Dkt. 1 at 24; Dkt. 1 at 2.)

On or about June 11, 2024, Petitioner was stopped by Border Patrol agents while driving and directed to accompany them to a Border Patrol Office. (Dkt. 1-5 at 2.) At the Border Patrol Office, Petitioner presented her passport. (*Id.*) Border Patrol fingerprinted and photographed Petitioner. (*Id.*) Border Patrol questioned Petitioner. (*Id.*) Petitioner was then allowed to leave with no further proceedings. (*Id.*)

On December 12, 2025, Petitioner's husband filed Form I-130, Petition for Alien Relative, on Petitioner's behalf. (Dkt. 1 at 5.) Petitioner filed Form I-485 an "application for a marriage-based green card" in February 2026. (*Id.*)

On August 31, 2026, Petitioner was arrested during a scheduled USCIS interview for her I-485 Application. (Dkt. 1 at 2.) No bond hearing has been held. Petitioner has no criminal history. (Dkt. 10-1 at 3.)

Petitioner filed the Petition on September 3, 2026, and argues her detention is unlawful on the following basis: (1) Fifth Amendment Procedural Due Process — Detention Without Constitutionally Adequate Pre-Deprivation Process; and (2) Fifth Amendment Substantive Due Process — Detention Not Reasonably Related to a Legitimate Governmental Purpose. (*Id.* at 8–12.)

On September 10, 2026, Respondents filed Response to Petition for Writ of Habeas Corpus. (Dkt. 10.) Respondents argue Petitioner is properly detained pending a bond hearing as this is Petitioner's first detention. (Dkt. 10 at 2–4.) Respondents concede Petitioner is entitled to a bond hearing but assert Petitioner has not yet exhausted her administrative remedies by requesting a bond hearing before the Immigration Court. (*Id.*)

On September 10, 20206, Petitioner filed a reply in which Petitioner largely reiterates her arguments in the Petition. (*See generally* Dkt. 11.)

///

///

## III. LEGAL STANDARD

Federal district courts possess the authority to grant petitions for a writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

### A. Petitioner's Procedural Due Process Claim

Petitioner argues her ongoing detention violates her procedural due process rights under the Fifth Amendment. (Dkt. 1 at 8–12.) Respondents assert that Petitioner is lawfully detained pending her next immigration hearing as this is her first arrest and she is at most entitled to a bond hearing. (Dkt. 10 at 4.)

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to noncitizens in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law[.]"); *Trump v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

**1. Protected Liberty Interest**

It is well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690. Though the liberty interests of U.S. citizens compared to noncitizens "are not coextensive," the Fifth Amendment nonetheless "entitles [noncitizens] to due process of law in deportation proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–06 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)). Many courts in this Circuit have affirmed the principle that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *See e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025).

It is well-established that a noncitizen has a liberty interest in remaining free from detention when the noncitizen was previously detained and released pursuant to conditional release or parole. *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-CV-00725-RBM-VET, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) (collecting cases); *see also Yi Wang v. James Janecha, et al.*, 2026 WL 2584800, at *1 (C.D. Cal. Aug. 31, 2026). Similarly, this Court, like many other courts in this Circuit, finds there is a substantial liberty interest in circumstances where a noncitizen commences immigration proceedings, and the government chooses not to detain them. *See Zhou v. Janec[k]a*, No. 5:26-CV-04167-DTB, 2026 WL 2365550, at *4 (C.D. Cal. Aug. 14, 2026) (collecting cases).

The Court finds persuasive the analysis in *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026). In *Kharitonova*, the petitioner

entered the United States on a nonimmigrant visa and subsequently applied for asylum whereby immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status. *Id.* at *1. The *Kharitonova* court found the government's deliberate decision not to detain the petitioner in the first instance bestowed upon her the same liberty interest as if she was initially detained. *Id.* at *1.

The same is true here. Petitioner entered the United States on a nonimmigrant student visa in August 2022. (Dkt. 1 at 3.) In June 2024, after her visa expired, Border Patrol detained, questioned, and released Petitioner. (Dkt. 1-5 at 2.) In December 2025, Petitioner filed Form I-130 and Form I-485 whereby immigration officials were aware of Petitioner's presence in the United States and her desire to lawfully remain here with her husband. (Dkt. 1 at 5.) Petitioner was not then promptly detained. (Dkt. 1 at 5.) This decision to allow Petitioner to live in the community during this time gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Accordingly, Petitioner has a liberty interest in remaining free from detention.

**2. *Mathews* test**

The Court applies the three-part test established in *Mathews v. Eldridge* to determine whether the government's procedures were constitutionally sufficient. 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (cleaned up).

The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Petitioner has lived continuously in the United States since 2022. (Dkt. 1 at 4.) During that time, Petitioner attended school and maintained stable employment. When she was detained by immigration officials, she was released and allowed to remain in the community with no further proceedings. She is married and resides with her husband. (Dkt. 1-5 at 1–3.) Accordingly, Petitioner's private interest in retaining her liberty is significant and this factor weighs in her favor.

Second, the Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community. *Zadvydas*, 533 U.S. at 693–94. Respondents do not argue that Petitioner is or has been previously determined to be at flight risk or a danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 ("As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither."). Additionally, Petitioner has no criminal history and there are no facts in the record to indicate she may be a flight risk. (Dkt. 10-1 at 3.) Accordingly, the Court finds that the risk of erroneous deprivation is high, and this factor weighs in Petitioner's favor.

The final *Mathews* factor is the government's interest. The Government's interest in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025). As mentioned previously, Petitioner has

no criminal history. (Dkt. 10-1 at 3.) Respondents do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard before she was detained. (*See generally* Dkt. 11.) Respondents, thus, fail to establish that the government has any interest in Petitioner's continued detention. As such, the third *Mathews* factor weighs in Petitioner's favor.

After considering all three *Mathews* factors, the Court concludes that Petitioner's detention without pre-deprivation notice or hearing violates her procedural due process protections and she is entitled to release. Having found Petitioner is entitled to relief on procedural due process grounds, the Court need not address Petitioner's additional arguments.

**B. Appropriate Relief**

The appropriate relief here is not a post-detention bond hearing. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("[S]uch a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L.Ed.2d 439 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *Himmat Sinah Khalsa v. James Janecka et al.*, No. 5:26-CV-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026). Here, procedural due process affords Petitioner the right to a hearing before a neutral decisionmaker prior to any arrest or detention to determine if the government has demonstrated by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) ("clear and convincing evidence standard of proof" is based on "general principles of procedural due process, reasoning that a detained person's liberty interest is substantial"). Accordingly, Petitioner should be immediately released from custody. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20,

2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

## V. CONCLUSION

For the reasons stated above, the Court grants the Petition.

DATED: October 16, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge